UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASIM AKBAR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 3685 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| THE CITY OF CHICAGO, a Municipal | ) | |
| Corporation; Chicago Police Officers | ) | |
| DARRIN WEST; LOUIS JONES, Star 11648; | ) | |
| CORDY FOUCH, JR., Star 19814; and | ) | |
| RICARDO DIXON, Star 19995, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This excessive use of force case arises from plaintiff Akbar's May 13, 2005 processing at the Chicago Police Department's ("CPD") Fifth District. Akbar brought suit in part under 42 U.S.C. § 1983 against the City of Chicago and four CPD officers (collectively, the "City"). Presently at issue is the admissibility of four[1] Complaint Registers ("CRs"), which contain other allegations of excessive force against several CPD officers. For the reasons stated within, the court finds that the CRs are inadmissible.

### I. BACKGROUND

Akbar seeks admission of CRs Nos. 307111, 107989, 1008494, and 310900. CR No. 307111 relates to Michael Myers, who alleged that on July 19, 2005, while detained in the Fifth District, he was punched and kicked by several officers, including defendants Fouch and Jones, after repeatedly demanding medical attention. CR No. 107989 pertains to Damien McFarland, who alleged that on July 30, 2007, defendant Jones beat him,

---

[1] Akbar initially sought admission of a fifth CR, No. 1005020, but did not submit the CR as the court ordered, and expressly noted seeking admission of four CRs in his supplemental briefing. Therefore, evidence related to CR No. 1005020 will not be considered.

again in the Fifth District lock-up, after McFarland complained that he was thirsty and needed toilet paper. CR No. 1008494 concerns Johnny Britton, who allegedly was beaten on August 20, 2007 by unknown officers in the Fifth District lock-up (while defendants Fouch and Jones were working there), in response to repeated demands to make a telephone call. CR No. 310900 regards Jerome Tate, who alleged that on January 29, 2006, defendants Jones and West, with another officer, beat and kicked Tate in response to Tate's refusal to hang up a telephone and his general disrespect toward the officers. None of these CRs was sustained.

## II. ANALYSIS

For evidence of prior bad acts to be admissible pursuant to Federal Rule of Evidence 404(b), the party offering the evidence must establish each of the following:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000) (internal citations omitted).

### A. Intent

While Akbar stresses that the CRs are directed toward establishing the officers' intent in using excessive force, the City responds that intent is not an element of a § 1983 excessive force claim. Both parties are correct. As noted in a case cited by both parties, "[a]lthough the standard for Section 1983 excessive force claims is objective reasonableness," rendering the defendant's subjective intent irrelevant to the claim itself, a plaintiff's claim for punitive damages puts a § 1983 defendant's intent at issue. *See*

*Evans v. Thomas*, 31 F. Supp. 2d 1069, 1074 n.8 (N.D. Ill. 1999). Akbar seeks punitive damages, and therefore has satisfied the first prong of the *Treece* test.

B. **Similarity of Facts and Closeness of Time**

The second question is whether the facts alleged in the CRs are sufficiently similar and close in time to those alleged by Akbar to be relevant. Intent, unlike *modus operandi*, does not require a "singular strong resemblance" between the prior bad act and the conduct alleged, but instead requires a lesser showing of similarity. *Compare United States v. Robinson*, 161 F.3d 463, 468 (7th Cir. 1998) (internal quotation marks and citation omitted) *and United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995). Still, similarity of incidents is required as a safeguard against the backdoor introduction of propensity evidence under another name.

Akbar urges that sufficient factual similarities exist to warrant admission of the CRs. Under Akbar's theory, each incident consisted of a complainant's act of disrespect near the time of processing, followed by a responsive act of violence by one or more defendant officers, with the intent of asserting control over the Fifth District lock-up.

These suggested similarities are insufficient to establish relevance. Two of Akbar's identified similarities – control over the Fifth District lock-up, and the processing of detained individuals – do not distinguish the incidents at hand from the vast majority of the defendant officers' on-the-job conduct. The remaining purported similarities – incidents of disrespect, followed by violence – are in fact quite dissimilar. While Akbar asserts that the officers beat him in response to his joke about a defendant officer's sexual orientation, the beatings in the CRs occurred in response to dissimilar provocations, as described above. Likewise, the displays of violence were markedly

different. Akbar alleges that several officers beat him with, among other things, a metal pole, a milk crate, and a bat. None of the CRs contain allegations of any similar implement, while one CR alleges a beating by brass knuckles, a device absent from Akbar's allegations. *See Wilson v. City of Chi.*, 6 F.3d 1233 (7th Cir. 1993) (evaluating similarity of method of prior bad act). Finally, each CR concerns no more than two officers named as defendants here (and, in the Britton CR, possibly as few as zero), and assert complaints against officers that are not defendants here. This uncertainty further strains the bonds of similarity, rendering the CRs irrelevant to this dispute.

The disparate time of three of the CRs compounds their irrelevance. Akbar is correct that the Seventh Circuit has found much longer gaps permissible in admitting evidence pursuant to Rule 404(b). *See, e.g.*, *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) (collecting cases and finding that nine-year period, while "a close case," was not too remote for admission of Rule 404(b) evidence). However, bad acts such as those presented here that are both factually dissimilar *and* temporally distant are significantly less likely to shed light on the allegations of intent in the case at hand, and therefore less relevant. *See Edwards*, 31 F. Supp. 2d at 1075 (noting that bad act occurring nearly two years after incident in question was still admissible because of "striking comparability"); *cf. Wilson*, 6 F.3d at 1238 (noting that factually similar prior act that occurred "only a few days previously . . . made it more likely (the operational meaning of 'relevant')" that the act in question occurred).

### C. Sufficiency to Support a Jury Finding

The CRs are also inadmissible because they are insufficient to support a jury finding that the defendant officers committed the similar acts alleged. None of the CRs

was sustained. The court finds that unsustained and unfounded CRs risk mini-trials on the issue of whether the conduct alleged in the CRS occurred and are inadmissible, in the absence of more factual similarity than is present here. *See Edwards*, 31 F. Supp. 2d at 1074 & n.7.

**D.     Unfair Prejudice**

Finally, even if the CRs were sufficient to support a jury finding, their limited relevance would be substantially outweighed by the unfair prejudice their introduction would cause. As described above, the CRs are both too broad and too narrow: they make no allegations concerning certain defendants while raising allegations concerning other officers not party to this suit. The introduction of such CRs would unfairly prejudice defendants by leading the jury to consider all allegations of inmate abuse at the Fifth District, a far broader question than that with which they will be tasked at trial. Moreover, the introduction of the CRs would necessitate extensive cross-examination and the calling of further witnesses, resulting in a "trial within a trial" focused on claims of violence both ancillary to and dissimilar from the conduct at issue here. *See Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989).

### III.  CONCLUSION

For the reasons stated above, evidence of the four offered CRs is excluded.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 14, 2009